```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```

YOUNG'S TRADING COMPANY, a        )
Tennessee Corporation, and        )
YOUNG'S TRADING.COM, a            )
Tennessee Corporation             )
                                  )
       Plaintiffs,                )    No. <u>03-CV-2637 P</u>
                                  )
vs.                               )
                                  )
FANCY IMPORT, INC., YEONG H.      )
YUN, CHUN H. YI, and HOON G.      )
JEONG,                            )
                                  )
       Defendants.                )

---

## ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE ANY EXPERT TESTIMONY FROM DOROTHY RAY ON BEHALF OF PLAINTIFF AT TRIAL

---

Before the court is a Motion to Exclude Any Expert Testimony From Dorothy Ray on Behalf of Plaintiff at Trial, filed by Defendants' Fancy Import, Inc., Yeong H. Yun, and Chun H. Yi ("Defendants") on July 15, 2005 (dkt #87). Plaintiffs Young's Trading Company and Young's Trading.com (collectively "Young's") filed their response in opposition on August 2, 2005. Defendants filed a reply on August 12. On September 28, 2005, the court held a hearing on the motion. Counsel for all parties were present and heard. The court heard the testimony of Dorothy Ray, and received a copy of Ray's deposition testimony and expert report. For the reasons below, the motion is GRANTED.

## I. BACKGROUND

Young's is engaged in the import and wholesale of fashion goods to retailers. Since 2001, Young's has sold its inventory both on-line and directly from its warehouse in Memphis. Young's alleges that while defendants Yun and Jeong were employed by Young's, they conspired with defendant Yi to obtain and convert confidential information, including customer and supplier lists, from Young's shipping and receiving department. Yun and Jeong then left Young's to work for a newly-formed competitor, Fancy Imports. Young's claims that upon the formation of Fancy Imports in September, 2002, Defendants used Young's confidential information in the business of Fancy Imports to Young's detriment. Young's argues that as a result of Defendant's misappropriation of Young's confidential information, Young's has lost profits and has been forced to install and operate a new server to conduct its internet business.

Young's filed a complaint against Defendants in the Chancery Court of Tennessee on July 24, 2003, alleging tortious interference with contract, breach of loyalty, breach of contract, and tortious conversion of confidential information. The case was removed to federal court by Defendants on August 26, 2003. During discovery, Young's identified Dorothy Ray as its expert concerning damages. Ray, who has served as Young's bookkeeper since its inception, prepared an expert report in which she offers three opinions that

qualify as expert testimony. First, Ray opines that Young's suffered lost profit damages as a result of Fancy Imports's use of Young's customer list. Specifically, she states that Young's lost profit damages are:

  A.  Lost profit from September 2002 to April 2003 is $162,979.27
  B.  Lost profit from May 2003 to December 2003 is $32,947.92
  C.  Monthly average loss by profit margin, after the server change is $16,670.93[1]

(Ray Rep. at 2). Second, Ray concludes that the loss of these profits is due partly to Young's server change. (Ray Rep. at 1). Finally, Ray states that "between the periods of September 2002 and April 2003, Fancy had a ratio of 23.59% of the same customers as Young's," while "[b]etween the periods of May 2003 and December 2003, after the server change, Fancy had a 9% ratio of the same new customers as Young's . . . ." (Ray's Rep. at 1). Ray opines that "the 9% of customers that matched after the server change would be from fair trade activities." (Ray's Rep. at 1).

In its motion, Defendants ask the court to exclude Ray from giving expert testimony at trial. Defendants argue that Ray's expert opinions are outside the scope of her expertise and that she has not demonstrated a reliable methodology that supports her

---

[1] In her deposition testimony, Ray stated that the figure $16,670.93 was based on sales rather than profits. Ray stated that the appropriate number, based on Young's profit margin, should be 40% of $16,670.93, or approximately $6,668.37. (Ray Dep. at 62).

conclusions. Thus, argue Defendants, Ray's expert testimony is not "the product of reliable principles and methods" as required by Fed. R. Evid. 702, and must be excluded by the court in accordance with its gatekeeping function. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 592 (1993).

## II. ANALYSIS

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

This standard involves essentially three elements. First, the expert must demonstrate to the trial court that he or she is qualified – "by knowledge, skill, experience, training or education" – to proffer an opinion. Second, by referring to "scientific, technical, or other specialized knowledge," Rule 702 requires "evidentiary reliability" in the principles and methods underlying the expert's testimony. Third, the expert's testimony must assist the trier of fact in that the testimony must "fit" the facts of the case. See <u>Pride v. BIC Corp.</u>, 218 F.3d 566, 577-78 (6th Cir. 2000); see also <u>Daubert</u>, 509 U.S. at 592-93 ("[T]he trial

-4-

judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.").

"The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." Fed. R. Evid. 702 advisory committee's notes (2000).

As stated by the Third Circuit, proponents "do not have to demonstrate . . . that the assessments of their experts are correct, they only have to demonstrate . . . that their opinions are reliable . . . . The evidentiary requirement of reliability is lower than the merits standard of correctness." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994); see also Ruiz-Troche v. Pepsi Cola, 161 F.3d 77, 85 (1st Cir. 1998)("Daubert neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance."). Several factors that the trial court may consider in analyzing the reliability of an expert's methods are: whether a method is

testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted in the scientific community. See Pride, 218 F.3d at 577.

In addition, the rejection of expert testimony is the exception rather than the rule, and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Fed. R. Evid. 702 advisory committee's notes (2000) (quoting United States v. 14.38 Acres of Land, 80 F.3d 1074, 1078 (5th Cir. 1996)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

Nevertheless, the proponent of the evidence has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. See Fed. R. Evid. 104(a); Bourjaily v. United States, 483 U.S. 171, 175-76 (1987). Young's, therefore, must demonstrate that the expert testimony offered by Ray satisfies the reliability requirements of Fed. R. Evid. 702 and Daubert. Wynacht v. Beckman Instruments, Inc., 113 F.Supp.2d 1205, 1207 (E.D. Tenn. 2000).

**A.   Expert Testimony Concerning Lost Profits**

In her expert report, Ray tracks the growth rate of Young's internet business before, during, and after Young's changed

servers.

> When Young's Trading.com Inc. originally started their website, they had an average sales growth rate of 242.92% for the first four months, with an average monthly sales figure of $14,802.02.  The sales figures then rose approximately 18.63% for the next ten months (average monthly sales of $95,525.96) until September of 2002, at which time Fancy's website went online.  From September of 2002 to April of 2003, their sales figures dropped by approximately 8% (average monthly sales of $84,242.77). In May of 2003, Young's decided to change servers and server maintenance companies.  Their sales rate growth for the first four months after the server change, over the previous period, was 109.93% (average monthly sales of [$]92,616.25).

(Ray Rep. at 1).  Ray concludes that Young's suffered lost profit damages of $202,595.56.[2]  Ray bases this figure on Young's drop in growth rate from the conception of the original website to the period in which Young's server was allegedly compromised due to Fancy's conversion of Young's confidential information.  (Ray Rep. at 1).  The court concludes that testimony concerning projected lost profits is beyond Ray's expertise and may not be offered as expert testimony at trial.

Dorothy Ray has been employed as an accountant for 11 years at a three-person accounting firm in the greater Memphis area.  (Ray Dep. at 8).  Although Ray has taken classes at the Universities of Memphis and Phoenix, she has not yet earned an accounting degree

---

[2]This amount is based on the figures provided in Paragraphs A – C in Ray's Report.  The amount provided in Paragraph C has been reduced by 60%, per Ray's deposition testimony.  See Ray Dep. at 62 (stating that Paragraph C "should not be 16,670.  The profit portion of that should be 40 percent of it.").

nor has she become a Certified Public Accountant. (Ray Dep. at 11-12). The majority of her courses have been in accounting, and her experience in economics and statistics is limited to one introductory course each. (Ray Dep. at 47; September 28 hearing).

During her deposition, Ray testified that her "general practice is the monthly day-to-day bookkeeping" of various clients, including Young's. (Ray Dep. at 24). At the September 28 hearing, Ray testified that, although she has compiled research in assisting other clients in assembling pro forma statements to receive Small Business Association loans, she has no personal experience in making the type of projections concerning lost profits that she makes in her expert report for Young's. Ray also acknowledged that she has little experience with internet-based companies, as she has only one other client whose business is derived principally from internet sales. Thus, the court finds that Ray has no experience in preparing the type of projections that she offers in her expert report. Furthermore, she has received little education or training that would assist her in making such projections.

As Young's bookkeeper, Ray is qualified to testify about the sales and profits that Young has made in the course of its business. The projections that Ray made with respect to Young's lost profits are, however, beyond her experience and education as a bookkeeper and are based solely on Young's past performance. At the September 28 hearing, Ray conceded that she did not incorporate

-8-

any research pertaining to the growth rate of other internet-based fashion wholesalers, or the growth rate of the internet economy as a whole, in her opinion concerning Young's lost profits. Ray's calculations also do not take into account any increase in competition from other similar businesses nor any analysis of the economic marketplace for on-line fashion accessory wholesalers in the United States from September 2002 to December 2003. (Ray Dep. at 46). The court is, therefore, also concerned with the methodology employed by Ray and concludes that Ray's expert testimony concerning Young's lost profits is not sufficiently reliable to be admissible at trial. See Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 149 (1999) (describing Fed. R. Evid. 702 as establishing "a standard of evidentiary reliability").

**B.   Expert Testimony as to the Cause of Lost Profits**

In her expert report, Ray concludes that "the drop in growth rate from the conception of the original website and the website after the server change would directly be attributed to the server change." (Ray Rep. at 1). Young's has not offered evidence that Ray possesses experience or expertise in replacing a server and the time, costs, and effects associated with such a change. Further, Ray has not performed any analysis demonstrating that such a drop in growth rate has been caused by a server change in other similarly-situated businesses. At the September 28 hearing, when asked what qualifications she possessed to opine on the cause of

-9-

lost profits, Ray doubted whether any person was qualified to be an expert on internet commerce due to its short history and stated that she was confident in the accuracy of the lost profit figures that she had produced in light of Young's history of growth. Ray, however, was unable to provide any evidence that she was an expert as to the cause of Young's lost profits.

Due to her personal knowledge of Young's finances as its bookkeeper, Ray is qualified to testify as to the expenses incurred in making the server change, the amount that Young's growth rate decreased during the changeover period, and that the drop in growth rate coincided with Young's server change. Nevertheless, she lacks any experience or training that qualifies her to testify as to the cause of Young's decreased growth rate. Thus, Ray is precluded from offering any expert testimony at trial as to the cause of Young's lost profits.

### C. Expert Testimony as to Fair Trade Activities

In her expert report, Ray compares the number of customers that were shared by Young's and Fancy Imports before and after Young's server change. Ray's comparison notes that

> [b]etween the periods of September 2002 and April 2003, Fancy had a ratio of 23.59% of the same customers as Young's, with a dollar amount of $452,720.21. Between the periods of May 2003 and December 2003, after the server change, Fancy had a 9% ratio of the same new customers as Young's, with a dollar amount of $91,522.00.

(Ray Rep. at 1, ¶ C, D). Ray concludes that "the 9% of customers that matched after the server change would be from fair trade

-10-

activities." (Ray Rep. at 1).

As the basis for her opinion that 9% of matching customers is from fair trade activities, Ray offers her "experience in the Internet." (Ray Dep. at 36).

> When I go to shop, I may look at several different Internet websites before I actually purchase something if I'm looking for a specific item. And not only - my husband has a business, my mother has a business in the accessory business, and we don't always buy from the same person. We don't always buy from the same shop. So fair trade activities would be going through each customer. I mean, I may buy from Young's one day, but I may buy from Jun Lee the next. And that's a fair trade activity.
> And the nine percent - I mean, if it's only nine percent, I wouldn't anticipate - if it was a larger number, then that would be the fair trade. But if you're talking about the situation at hand, is where I got that opinion from.

(Ray Dep. at 36-37). Ray further acknowledged that her opinion that 9% of shared customers was the result of fair trade activities was based on "anecdotal evidence from [her] experience as the accountant of Young's Trading and helping out at [her] mother's on-line business." (Ray Dep. at 47).

Ray's opinion concerning fair trade activities exceeds the bounds of her expertise and training. Ray's personal experience in shopping on-line is an insufficient basis to conclude that sharing 9% of customers is considered fair trade activity. Ray's personal experience as a consumer on the internet does not qualify her as an expert on the subject of fair trade practices among competitors in the on-line fashion accessory wholesaler industry. Furthermore, Ray could not point to any studies or analyses on the economic

marketplace for on-line fashion accessories, or internet commerce generally, that supports her opinion. Thus, Young's has not demonstrated that Ray's opinion that sharing 9% of customers is the result of fair trade activity is "based upon sufficient facts or data [or] . . . is the product of reliable principles and methods." Fed. R. Evid. 702. Ray is therefore precluded from offering such an opinion at trial.

### III. CONCLUSION

For the reasons above, the Defendants' Motion to Exclude Any Expert Testimony From Dorothy Ray on Behalf of Plaintiff at Trial is GRANTED.

IT IS SO ORDERED.

TU M. PHAM
United States Magistrate Judge

October 6, 2005
Date

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 105 in case 2:03-CV-02637 was distributed by fax, mail, or direct printing on October 7, 2005 to the parties listed.

---

Beth Brooks
BROOKS LAW FIRM
119 Racine
Memphis, TN 38111--089

Young's Trading Comp
5529 Summer Ave.
Ste. 101
Memphis, TN 38134

Hoon G. Jeong
184 Scarborough Ln.
Apt. #104
Cordova, TN 38018--486

Eugene S. Forrester
FARRIS MATHEWS BRANAN BOBANGO HELLEN & DUNLAP, PLC
One Commerce Square
Ste. 2000
Memphis, TN 38103

A. Todd Merolla
A. TODD MEROLLA, P.C.
5855 Sandy Springs Cr.
Ste. 300
Atlanta, GA 30328

Honorable Tu Pham
US DISTRICT COURT